443 P.2d 933

The STATE of Arizona, Appellant,

v.

Ernest STONE, Individually and as surviving spouse of Hathaway Stone, Deceased; Darrell Stone and Denise Stone, by their guardian ad litem, Ernest Stone, Appellees.

No. 2 CA–CIV 359.

Court of Appeals of Arizona.

July 23, 1968.

As Amended on Denial of Rehearing Sept. 9, 1968.

Review Granted Oct. 22, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., J. Mercer Johnson, Sp. Asst. Atty. Gen., Tucson, for appellant.

Rees, Estes & Browning, by William D. Browning, Tucson, for appellees.

MOLLOY, Judge.

Defendant, State of Arizona, appeals from an adverse judgment in a wrongful death action, raising questions both as to whether this suit is maintainable at all and as to the propriety of various rulings made during the trial. We find the failure of the complainant to state a claim to be dispositive.

The State contends there was no jurisdiction in the court to try this claim because there was no presentment of the claim prior to suit. The State relies upon A.R.S. § 12–821 which reads as follows:

> "Persons having *claims* on contract or *for negligence* against the state, *which have been disallowed,* may on the terms and conditions set forth in this article, bring action thereon against the state and prosecute the action to final judgment." (Emphasis ours)

Our Supreme Court in State v. Miser, 50 Ariz. 244, 72 P.2d 408 (1937), held that, by reason of this statute,[1] a suit could not be maintained against the state under a minimum wage law [2] until claim had been presented to "the proper officer" and "disallowed" by them. (50 Ariz. at 258, 72 P. 2d 408.) In *Miser,* it was indicated that the meeting of such prerequisites would be necessary in order to confer upon the court "jurisdiction of the subject-matter" of the suit. (50 Ariz. at 258, 72 P.2d 408.) *Miser's* jurisdictional pronouncements were reiterated by the Arizona Supreme Court in State v. Barnum, 58 Ariz. 221, 118 P.2d 1097 (1941), Hutchins v. Frohmiller, 55 Ariz. 522, 103 P.2d 956 (1940), in State v. Angle, 56 Ariz. 46, 104 P.2d 172 (1940), and in Best v. State, 56 Ariz. 408, 108 P.2d 560 (1940).

In Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), the governmental immunity doctrine was judicially abrogated in this state. However, the right to bring suit against the state and the liability of the state are two distinct things:

> "Immunity from an action is one thing; immunity from liability is another; hence the state does not waive its immunity from liability for the negligence of its agents, servants or employes by a statute conferring jurisdiction only upon the court." State v. Sharp, 21 Ariz. 424, 428, 189 P. 631, 632 (1920).

Conversely, the abrogation of governmental immunity should have no effect, per se, upon the limitations placed upon the method and manner of bringing suit against the state. See 49 Am.Jur. States, Territories and Dependencies § 99, at 316; and 81 C.J.S. States § 215(c), at 1310.

In this state, the power of the legislature to establish the manner of bringing suit against the state is set forth in the Constitution:

> "The Legislature shall direct by law *in what manner* and in what courts suits may be brought against the State." (Emphasis ours) Ariz.Const. § 18, Part 2, Article 4, A.R.S.

In view of the *Miser, Hutchins, Angle, Best* and *Barnum* decisions, which this court has no prerogative to overrule or modify, McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968), the only question here is whether the legislature intended the subject claims statute to apply to tort claims. The language used by our Supreme Court would seem to indicate that it does:

> "It will be observed that the right to sue the state is given those having *claims*

---

1. Then § 4379, Revised Code 1928, which was in substantially the same verbiage as the present statute.

2. Section 1, Ch. 12, Session Laws of 1933, now A.R.S. § 23–391.

[emphasis in original] against it on contract or for *negligence* [emphasis ours] *that have been disallowed* [emphasis in original], and while the language of this section merely provides a remedy to enforce a liability existing under general law and does not create a cause of action where none existed before, State v. Sharp, 21 Ariz. 424, 189 P. 631, and State v. Dart, 23 Ariz. 145, 202 P. 237, yet, in prosecuting those that fall within the limitations it prescribes, it is necessary that it be done in accordance with the provisions of the statute dealing with that subject."

State v. Miser, 50 Ariz. at 257, 72 P.2d at 413.

California, from whence we derived this claims statute,[3] has consistently applied it to tort claims. See Parker v. Los Angeles County, 62 Cal.App.2d 130, 144 P.2d 70 (1944); and State v. Superior Court, 14 Cal.App.2d 718, 58 P.2d 1322 (1936). In Stone (93 Ariz. at 392, 381 P.2d 107), our Supreme Court indicated that it preferred the approach of California in abrogating governmental immunity, as taken in Muskopf v. Corning Hospital District, 55 Cal. 2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). *Muskopf* has been held not to affect California's claims presentation requirements. Dias v. Eden Township Hospital District, 57 Cal.2d 502, 20 Cal.Rptr. 630, 370 P.2d 334 (1962).[4]

In construing statutes, the overriding consideration always is the determination of the true legislative intent. Bushnell v. Superior Court, 102 Ariz. 309, 428 P.2d 987 (1967). An important consideration in construing a statute is that the court give some meaning to all of the language used in the statute, if this is possible. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). And, no construction should be given which results in "absurd consequences." City of Phoe-

nix v. Superior Court, 101 Ariz. 265, 267, 419 P.2d 49, 51 (1966). The plaintiff here would have us give no meaning to the words "or for negligence," which are contained within A.R.S. § 12-821 because the legislature has appropriated no money to pay for claims arising in negligence, and it would therefore be absurd to require the presentation of such claims to officials who have no authority whatsoever to approve of them.

Among the recognized purposes of a claims statute such as this is to permit the state to investigate the circumstances of claims against it, see 81 C.J.S. States § 207(2), at 1276; and Olender v. State, 194 Misc. 583, 87 N.Y.S.2d 578 (1949), and " * * * to establish an orderly procedure by which the legislature will be advised of claims in instances where no provision has been made for payment." 45 Cal.Jur.2d State of California § 163, at 517–518. Purposes such as these are as well served by the investigation and planning for tort claims as in the case of those arising in contract or by statute.

That there is need for early investigation of negligence claims is demonstrated by practices in the insurance industry. We see no reason why the state would not also benefit from a prompt investigation. Nor is it beyond possibility that the state, in giving management to its fiscal affairs, might determine to secure liability insurance for negligence claims, if the number and amount of such claims renders such action advisable.

The necessity for fiscal planning is particularly pertinent in this state, which has limited itself by constitutional mandate to a total indebtedness of $350,000. Ariz. Const. art. 9, § 5. Taxes must be levied upon property currently to defray the expenses of each fiscal year. Ariz.Const. art. 9, § 3. It seems as desirable to apportion on a current basis obligations incurred in

3. Our indebtedness in this regard is acknowledged in State v. Sharp, 21 Ariz. 424, 427, 189 P. 631 (1920).

4. Since *Muskopf*, the California Legislature has shortened the time to present claims against the state and all political

subdivisions thereof to 100 days, see Viles v. State, 66 Cal.2d 24, 56 Cal.Rptr. 666, 670, 423 P.2d 818, 822 (1967), and this limitation has been upheld against due process attack, Tammen v. County of San Diego, 66 Cal.2d 468, 58 Cal.Rptr. 249, 257, 426 P.2d 753, 761 (1967).

tort as in the case of obligations incurred in contract.

The only existing statute pertaining to the method of presenting a claim for allowance or disallowance uses broad language, but the plaintiff argues that it is obviously directed at claims arising in contract:

"A. *All claims* against the state for obligations *authorized, required or permitted* to be incurred by any state officer or agency, shall be paid only in the following manner:

"The claimant shall present an itemized claim, executed by him under penalties of perjury and approved by the head official of each office or state agency under which the obligation was incurred, or by some other person thereof, if expressly authorized to approve the claim. Such claim shall be so presented within one year after the claim accrues, and not afterward. The claim shall then be presented to the state auditor and, if approved, the auditor shall draw his warrant therefor on the state treasurer, who shall pay it when countersigned by the governor but only from the appropriation made therefor.

\* \* \* \* \* \*

"F. All claims executed as provided by the provisions of this section shall contain the following statement over the signature of the claimant:

" 'I declare under penalties of perjury that this claim has been examined by me and to the best of my knowledge and belief is a true, correct and valid claim.' " (Emphasis ours)

A.R.S. § 35–181.01, subsecs. A and F.

Prior to the 1956 revision of our code, there existed on our statute books, a claim statute which appeared to be equally all-inclusive insofar as "claims" are concerned. It contained no language more applicable to contract than to tort claims:

"Persons having *claims* against the state shall exhibit the same, sworn to, with the evidence in support thereof to the auditor, to be audited, settled and allowed, within one [1] year after such claim shall accrue, and not afterwards;

and no claim shall be audited or allowed the items of which are not specifically set out." (Emphasis ours) Arizona Code Annotated 1939, § 4–304.

This statute has never been specifically repealed. In the "Reviser's Note" in the 1956 Code, after § 35–181, it is indicated that the reviser believes that § 4–304 of the 1939 Code had been "superseded" by the adoption of Ch. 86 of the Laws of 1943, which is the origin of codified § 35–181. A.R.S. § 35–181 contains language, pertinent to the problem at hand, very similar to § 35–181.01, quoted supra. If § 4–304 of the 1939 Code was intended to apply to tort claims, and § 38–181 of the 1956 Code was not, then the assumption of the codifiers, and presumably the legislature, that the latter "superseded" the former would be erroneous.

Even before *Stone*, supra, there was the possibility that the state might become liable in negligence for an act committed other than in pursuance of "purely governmental activities." City of Phoenix v. Lane, 76 Ariz. 240, 243, 263 P.2d 302, 303 (1953) (dictum), and see Annot.: State's immunity from tort liability as dependent on governmental or proprietary nature of function," 40 A.L.R.2d 927 et seq. It is this liability that the legislature must have had in mind in specifically referring to claims "for negligence" in A.R.S. § 12–821.

In construing a statute, it is proper to consider other statutes bearing upon the same subject matter. Trickel v. Rainbo Baking Co. of Phoenix, 100 Ariz. 222, 412 P.2d 852 (1966). In this regard, A.R.S. § 35–191 is of interest. This section deals with "administrative adjustment" of claims, whereby a claim "disallowed" because of "technical defect" can nevertheless be paid. This section by its express terms is limited only to claims arising out of "contractual relations" (§ 35–191, subsec. A) and the statute by express language eliminates from its purview claims "for damages for injury to a person or property." A.R.S. § 35–191, subsec. F.

A.R.S. § 35–181.01 is in the same chapter and article as § 35–191. It seems reasonable to this court that, if the legislature had

intended to except from A.R.S. § 35–181.01 claims arising in tort, it would have so stated, as it did in A.R.S. § 35–191.

■ Recognizing that the State of Arizona has always maintained close fiscal control over its expenditures and considerering the object of statutes of this character, we do not believe that our legislature intended that negligence claims be excepted from a claims statute applying to "all claims" (A.R.S. § 35–181.01), or from a statute (A.R.S. § 12–821) contained in an article entitled "Actions Against The State on Contract or For Negligence" (Art. 2, Ch. 7, Art. 12, A.R.S.). There would appear to be no legislative intent to favor negligence claims over those arising in contract. If anything, the contrary would appear to be the case, i. e., see A.R.S. § 35–191 discussed supra. We do not regard tort claims as being any more sacrosanct than those arising under the minimum wage law, as in *Miser, Angle, Best* and *Barnum,* supra. It is our view that negligence claims, like claims arising in contract, fall within the purview of A.R.S. § 12–821 and § 35–181.01.

After the *Stone* decision, state officials and employees are "permitted" by our law to obligate the state by their negligent conduct when committing non-discretionary acts in pursuance of their official duties. Under *Miser, Hutchins, Angle, Best,* and *Barnum,* a claim for negligence is not "disallowed" until presented as contemplated by A.R.S. § 35–181.01. We do not believe, however, that when so disallowed, either by the department head, or, if approved, by that official, when disallowed by the state auditor, that it is necessary to attempt to mandamus these officials, as required in the case of claims arising under the non-discretionary duty of paying a minimum wage required by the clear mandate of statute. See State v. Angle, 56 Ariz. at 53, 104 P.2d at 175–176.

■ The plaintiffs contend that the decision of the Supreme Court in this action, Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), establishes as the law of this case that the plaintiffs have stated a cause of action against the state. We are unable to accept that the state can be held to be estopped from raising a defense in an action because it failed to raise such defense before it became a party to the action. The record establishes that the State of Arizona was not made a party to this action until the filing of the third amended complaint on March 25, 1965, almost two years after the rendition of the *Stone* opinion.

*Stone* was concerned with the problem of whether " * * * the complaint failed to state a claim against the Highway Commission and the named State employees for the reason that the Commission and the named engineers, being state employees, are exempt under the doctrine of governmental immunity from tort liability." (93 Ariz. 387, 381 P.2d 108.) Our Supreme Court has said:

"So far as the right to sue or be sued is concerned, there is no such thing as the Arizona State Highway Commission. The demurrer was properly sustained as to the commission, one of the other named defendants; there being no such legal entity in existence." Grande v. Casson, 50 Ariz. 397, 409–410, 72 P.2d 676, 681 (1937).

It seems clear that the prior appeal involved a suit against certain named individuals, and not the State of Arizona. An examination of the briefs in that appellate proceeding reveals that there was no contention there made that the State of Arizona should be held liable for plaintiffs' injuries. The assignment of error bringing the problem of governmental immunity before the Court read:

"The lower court erred in its order of April 6, 1959, and judgment entered May 20, 1959, dismissing the appellants' second amended complaint for failure to state a claim on the ground and for the reason that a proper claim for relief was stated against the several highway engineers and their bonding companies, *in that the state employees named as defendants are not immune to civil suit for their negligence.*" (Emphasis added)

Though the State was not a party to the prior appeal, the question of governmental immunity was squarely before the Court, for this doctrine had been extended in Ari-

:zona by previous decisions of the Supreme Court to governmental employees sued as individuals. Larsen v. County of Yuma, 26 Ariz. 367, 371, 225 P. 1115, 1117 (1924); and see Grande v. Casson, supra, 50 Ariz. at 410, 72 P.2d at 681 (1937). The judgment rendered in favor of the individual defendants, which prompted the prior appeal, was based upon the *Larsen* doctrine, and a declaration by the Supreme Court on the efficacy of a governmental immunity defense was required. Hence, we see no merit to the appellees' contention that a ruling here on the basis of a claim statute will be a presumptuous declaration by this court that the Supreme Court had no "jurisdiction" to render its opinion in the previous *Stone* appeal.

But, *Stone* did not dispose of issues not framed by the pleadings nor preclude enlargement of the issues after remand. Harbel Oil Co. v. Superior Court, 86 Ariz. 303, 307, 345 P.2d 427, 429–430 (1959); and see Temp-Rite Engineering Co. v. Chesin Construction Co., 3 Ariz.App. 229, 231, 413 P.2d 288, 290 (1966); and Harbel Oil Co. v. Steele, 1 Ariz.App. 315, 317, 402 P.2d 436, 438 (1965); and, generally, 5B C.J.S. Appeal and Error § 1827, at 200–201. Until such time as the State was joined as a defendant, claims statutes pertaining only to the State itself would have no place in the lawsuit. Five days after being brought into the case, the State raised the defense of A.R.S. § 12–821 by a motion to dismiss. Whether this statute was satisfied is one of the "issues" delineated by the pretrial order [5] thus distinguishing this case from decisions such as Spence v. State, 198 Cal.App.2d 332, 18 Cal.Rptr. 302 (1962), which held that the failure to include this defense in the pretrial order eliminated the issue from the case. We believe the raising of this defense was both proper and timely.

■ We note that the State has mentioned obliquely, but not argued, the requirement of the posting of a cost bond prior to suit as established by A.R.S. § 12–823.[6] We doubt that our Supreme Court would consider failure to satisfy this requirement to be destructive of the jurisdiction of the court. See Bried v. Superior Court, 11 Cal.2d 351, 79 P.2d 1091, 1093 (1938), and Spence v. State, supra, 18 Cal.Rptr. at 304. By reason of the State's failure to argue this matter, we deem its contentions in this regard to be abandoned. Dyer v. Dyer, 92 Ariz. 49, 373 P.2d 360 (1962); Mozes v. Daru, 4 Ariz.App. 385, 420 P.2d 957 (1966).

Judgment reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

5. Minute order of August 19, 1966, issue No. 9.

6. "At the time of filing the complaint in an action authorized by § 12–821, plaintiff shall file therewith a bond in an amount not less than five hundred dollars, to be fixed and approved by a judge of the court and conditioned upon the payment by plaintiff of all costs incurred by the state in the action if plaintiff fails to recover judgment."